IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | No. 13 CR 237 | |
| VENUS PEARSON, | | |
| | Judge Gary Feinerman | |
| Defendant. | | |

FILED
2-26-15
FEB 26 2015
Judge Gary Feinerman
United States District Court

### DEFENDANT'S PLEA DECLARATION

### Charges in This Case

The indictment in this case charges defendant with five counts of wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1-5), five counts of theft of government funds, in violation of Title 18, United States Code, Section 641 (Counts 6-10), and two counts of aggravated identity theft, in violation of Title 18, United States Code, Section 1028A (Counts 11-12).

Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charges to Which Defendant Is Pleading Guilty

By this Plea Declaration, defendant agrees to enter a voluntary plea of guilty to to the following counts of the indictment: Count One, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 and Count Eleven, which charges defendant with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A.

## **Factual Basis**

Defendant will plead guilty because she is in fact guilty of the charges contained in Counts One and Eleven of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt:

a. With respect to Count One of the indictment: Beginning not later than in or about January 2008, and continuing until not earlier than in or about 2012, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Venus Pearson, along with others, knowingly devised, intended to devise, and participated in by aiding and abetting a scheme to defraud

2

and to obtain money and property from the United States Department of Treasury by means of materially false and fraudulent pretenses, representations, and promises. For the purpose of executing this scheme, on or about August 5, 2010, at Westchester, defendant and others did knowingly cause to be transmitted by means of wire communication in interstate commerce from Westchester, Illinois, to the Internal Revenue Service ("IRS") in Kansas City, Missouri, certain signs and signals, namely, a United States Individual Income Tax Return (Form 1040 and attachments) for the tax year 2009 on behalf of Taxpayer J.D., which was false and fraudulent as to material matters, in that defendant and co-schemers stated and caused to be stated in that return: (a) on Form 1040, line 7, and Form W-2, that Taxpayer J.D. earned wages of $12,000 from Prudential Preferred Property; (b) on Form 1040, line 16b, and Form 1099-R, that Taxpayer J.D. received a pension and annuities distribution from Advanced Womens Care 401 K Profit S of $29,000; (c) on Form 1040, line 61, that Taxpayer J.D. withheld $12,200 in federal income taxes from Forms W-2 and 1099; and (d) on Form 1040, lines 72 and 73a, that Taxpayer J.D. overpaid her federal taxes in the amount of $6,894 and was entitled to a refund of that amount, whereas defendant and her co-schemers well knew

at the time that such statements were false and fraudulent, in violation of Title 18, United States Code, Section 1343. More specifically, starting no later than January 2008, defendant and her co-schemers obtained personal identifying information, including names, social security numbers, and dates of birth, of other real people without those persons' knowledge or consent. As defendant was aware, these individuals included persons who were patients at Chicagoland hospitals and nursing facilities and persons residing at Facility A, a residential facility in the Chicago area for disabled children and adults. As part of the scheme, defendant and co-schemers also obtained the employer identification numbers ("EINs") of real businesses and used those EINS without those businesses' knowledge or consent. Using this information, defendant aided and abetted the preparation of false and fraudulent individual federal income tax returns (Forms 1040) for tax years 2007 through 2011. The false and fraudulent returns were filed in the names of individuals whose personal identifying information had been stolen without their consent or knowledge, including the patients at nursing homes and residents at Facility A. These returns claimed false amounts related to items of 4 income, credits, and deductions. For example, using the EINs of real businesses, defendant and co-schemers

created or caused to be created fictitious and fraudulent Forms W-2, which reported fictitious wages earned by the individuals in whose names the tax returns were filed and fictitious federal income tax withheld, and Forms 1099-R, which reported distributions from pensions, annuities, retirement or profit-sharing plans, IRAs, and insurance contracts. Defendant and her co-schemers also reported or caused to be reported on the returns which were prepared and filed fictitious business income on Schedule C and interest income on Schedule B, and falsely claimed Earned Income Tax Credits (a special tax credit for certain people who worked and earned below a threshold level of income) and education and other credits to which defendant and her co-schemers knew the taxpayer was not actually entitled. Defendant and her co-schemers further used and knowingly caused to be used stolen identities, including of individuals residing at Facility A, to falsely claim dependents on some returns. As a result of the inclusion of fictitious income, credits, and deductions, the federal income tax returns claimed tax refunds owing to the taxpayers at the time of the returns' filing. An example of one such false and fraudulent return is the 2009 federal tax return prepared in the name of J.D., as charged in Count One, which falsely reported that J.D. earned wages of $12,000 from

Prudential Preferred Property, received a pension and annuities distribution of $29,000, and withheld $12,200 in federal income taxes, which resulted in a refund of $6,894. As defendant well knew at the time, J.D. did not actually work for Prudential Preferred Property and did not withhold the specified amount in federal income tax. Defendant aided and abetted the electronic transmission of the false and fraudulent returns to the Internal Revenue Service via interstate wire from the Northern District of Illinois to IRS Service Centers in Kansas City, Missouri; Philadelphia, Pennsylvania; Andover, Massachusetts; and elsewhere, by among other things providing internet service to transmit the fraudulent tax return information. Defendant acknowledges that information contained in Forms 1040, including but not limited to the attached forms and schedules, is material to the IRS in determining and issuing taxpayer refunds under the Internal Revenue Code. Based on the misrepresentations regarding the taxpayers' income, deductions, and credits on fraudulent federal income tax returns, the United States Department of Treasury issued federal tax refunds. Defendant and co-schemers caused these refunds to be sent by check to addresses with which she was associated or deposited electronically into bank accounts she controlled, including two accounts in

defendant's name at Citibank, two accounts in defendant's name at Guaranty Bank, an account at Guaranty Bank in defendant's name d/b/a Cream Community Care, three accounts at TCF Bank in the name of Financial Tax Network, Inc., and an account at U.S. Bank in the name of Financial Tax Network, Inc. Defendant withdrew and committed to her own use some of the funds that were deposited into these accounts. Defendant also knowingly assisted Individual A's in distributing funds from fraudulent tax returns which were deposited in Individuals A's accounts at Bank of America. In summary, Individual A was a knowing participant in the scheme to file fraudulent tax returns and obtain money from the United States Treasury. In addition, defendant aided and abetted the filing of additional fraudulent tax returns, refunds for which the IRS did not pay. Defendant admits that, during tax years 2008 through 2011, she failed to report on an individual income tax return, Form 1040, any of the fraudulent refund money that she received and used for her own benefit. Defendant further admits that the fraudulent refunds she received exceeded $10,000 for each of these tax years.

b. With respect to Count Eleven of the indictment: In or about August 2010, at Westchester, in the Northern District of Illinois, Eastern Division, and

elsewhere, defendant did knowingly aid and abet the possession and use, without lawful authority, of a means of identification of another person, namely, the social security number of J.D., during and in relation to the offense conduct described in Count One of this indictment, knowing that the means of identification belonged to another person, in violation of Title 18, United States Code, Section 1028A(a)(1).

Specifically, as part of the tax fraud scheme described in in Count One of the Indictment, defendant knowingly assisted, aided and abetted the possession of personal identifying information of real people in order to knowingly assist in obtaining money from the filing of fraudulent federal income tax returns by means of refunds associated with those returns. More specifically, in or prior to August 2010, defendant and co-schemers obtained the personal identifying information of J.D., including his/her name, date of birth, and social security number. This information was used to file a false and fraudulent federal income tax return in J.D.'s name for tax year 2009, and received a fraudulent tax refund of $6,894. Defendant provided banking information which allowed for the deposit of the refund. Defendant was aware that the identity information was used for this purpose and defendant and her co-schemers converted the funds for their own personal use. Defendant and co-schemers well knew at the time that J.D.

8

was a real person, that J.D. did not consent to the use of his/her identity for this purpose, that defendant and her co-schemers did not have lawful authority to use J.D.'s identity, and that defendant and her co-schemers were not entitled to the federal tax refund in J.D.'s name.

Defendant understands and acknowledges that although she did not personally commit every act, she was a knowing participant in the above described scheme, knew that acts were being committed and benefitted from the scheme.

## Maximum Statutory Penalties

Defendant understands that the charges to which she is pleading guilty carry the following statutory penalties: a. Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years. Count Eleven carries a mandatory sentence of two years' imprisonment, which is required to be consecutive to any other sentence. Count Eleven also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Eleven the judge also may impose a term of supervised release of not more

than one year. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which she has pled guilty, in addition to any other penalty or restitution imposed. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 22 years' imprisonment, and the minimum sentence is two years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $300, in addition to any restitution ordered by the Court. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the U.S. Department of Treasury, Internal Revenue Service, in an amount to be determined by the Court at sentencing, which amount shall reflect

credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution. Defendant understands that the special assessment of $300 must be paid at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court. Defendant understands that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

### Waiver of Rights

Defendant understands that by pleading guilty she surrenders certain rights, including the following:

### Trial rights

Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial. The

trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had

established defendant's guilt beyond a reasonable doubt. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence. At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

Presentence Investigation Report/Post-Sentence Supervision. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and

extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

Signed this date: __2-26-2015__

Venus Pearson, defendant

*/s/ Venus Pearson*